UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHICAGO INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:09-CV-977 (CEJ) |
| ) | |
| THE ARCHDIOCESE OF ST. LOUIS, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on the joint motion for summary judgment filed by plaintiff Chicago Insurance Company (CIC) and counterclaim defendants Certain Underwriters at Lloyd's London and London Companies (collectively, London Insurers). Defendants, the Archdiocese of St. Louis and Archbishop Robert J. Carlson (collectively, the Archdiocese) oppose the motion and the issues have been fully briefed.

CIC has also filed a motion for judgment on the pleadings.  Because of the Court's ruling on the joint motion for summary judgment, the motion for judgment on the pleadings is moot.

I.     Background

On June 29, 2009, CIC filed its first amended complaint against the Archdiocese for declaratory judgment, claiming that the Archdiocese is not entitled to insurance coverage for losses incurred from an underlying lawsuit under any policy issued by CIC. The Archdiocese brought London Insurers into this action as counterclaim defendants.

London Insurers filed a counterclaim for declaratory judgment against the Archdiocese asserting that the policies it issued does not afford coverage for the loss incurred by the Archdiocese in respect to the underlying lawsuit.

The underlying lawsuit was filed on June 10, 2003 by Allen Krump against the Archdiocese in the Circuit Court of the City of St. Louis. Allen Krump alleged that Michael McGrath, a former priest and employee of the Archdiocese, sexually molested his son, Christopher Krump. Allen Krump further alleged that the sexual misconduct of Michael McGrath resulted in Christopher Krump's suicide. On February 25, 2005, the Circuit Court of the City of St. Louis dismissed all claims against the Archdiocese except for the following: Count I - that the Archdiocese "inappropriately, recklessly, and/or intentionally placed young Christopher Klump in a knowingly dangerous environment[,]" which caused him to suffer "emotional and psychological" illness "from which he never recovered"; Count V - that the Archdiocese intentionally failed to supervise its clergy; and Count VI -  that the Archdiocese intentionally failed to protect and supervise children under its care.  As part of the settlement of the underlying litigation, on February 16, 2007, the Archdiocese and Allen Krump entered into a Release Agreement which explicitly discharged the Archdiocese from any future liability regarding the alleged misconduct against Christopher Krump. The Archdiocese paid Allen Krump in full and sought indemnification from CIC and London Insurers.

CIC and London Insurers issued policies that provided excess indemnity coverage to the Archdiocese. The CIC policies specifically incorporated the terms of the underlying policies issued by London Insurers to the Archdiocese. The London Insurers' policies limit coverage to "sums which the Assured shall be obligated to pay by reason of the liability imposed upon the Assured by law or assumed by the Named

Assured under contract or agreement . . . on account of personal injuries . . . arising out of an occurrence[.]"  The London Insurers' policies define "occurrence" as "an accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally result in personal injury[.]"  The policies further limit coverage for a "loss," which is defined as "the sums paid as damages in settlement of a claim or in satisfaction of a judgment for which the insured is legally liable."

In support of their joint motion for summary judgment, CIC and London Insurers argue that they have no duty to indemnify the Archdiocese because the three claims that were not dismissed by the trial court in the underlying lawsuit alleged intentional conduct for which the insurance policies preclude coverage.  CIC and London Insurers make an alternative argument that even if the remaining claims are categorized as negligence (as opposed to intentional acts), Missouri law bars claims against religious organizations for negligence, which would relieve CIC and London Insurers from their duty to indemnify.  In response, the Archdiocese contends that Count I "alleges 'recklessness' and 'inappropriate' conduct on the part of the Archdiocese, not just intentional conduct[,]" which accordingly qualifies as an unintentional "occurrence" under the policies.

II.  Legal Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered if the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit

of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. United of Omaha Life Ins. Co. v. Honea, 458 F.3d 788, 791 (8th Cir. 2006) (quoting Fed. R. Civ. P. 56(e)). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).

III.  Discussion

"The burden of proving coverage is upon . . . the party who would seek to recover under the policy, even though the insurer . . . brought the declaratory judgment action." Citizen Ins. Co. of Am. v. Leiendecker, 962 S.W.2d 466, 451 Mo. Ct. App. 1998 (citing Universal Reinsurance Corp. v. Greenleaf, 824 S.W.2d 80, 83 (Mo. Ct. App. 1992). Accordingly, it is the burden of the Archdiocese to prove that it is entitled to coverage under the policy. The law to be applied in a suit in federal court based on diversity is the law of the state. Erie v. Tompkins, 304 U.S. 64, 78 (1938). Because the matters in this case do not arise under the Constitution of the United

States or an Act of Congress, the Court is required to apply Missouri substantive law. See id.

There is no dispute that the policies at issue here exclude coverage for intentional acts. The Archdiocese focuses solely on Count I of the underlying lawsuit in opposing the joint motion for summary judgment.  In that count, the plaintiff alleged that the Archdiocese "inappropriately, recklessly and/or intentionally" caused the death of Christopher Krump.  The Archdiocese argues that the exclusion of intentional acts from coverage does not apply to reckless acts.

The Archdioces correctly cites to American Family Mut. Inc. Co. v. Pacchetti, 808 S.W.2d 369 (Mo. 1991) and Steelman v. Holford, 765 S.W.2d 372 (Mo. Ct. App. 1989) to illustrate that reckless conduct is not the equivalent of intentional conduct. Steelman, 765 S.W.2d 372 at 377 ("reckless acts do not amount, in law, to intentional acts so as to permit an insurer to deny coverage under an exclusion clause in its liability insurance policy which provides that it does not provide coverage for injury intentionally caused by the insured."); see also Pacchetti, 808 S.W.2d 369 at 371.  As such, insurance coverage is not automatically precluded for acts that are alleged as "reckless" under an insurance policy that defines an "occurrence" as "an accident or a happening or event or a continuous or repeated exposure to conditions which *unexpectedly and unintentionally* results in personal injury[.]"  Accordingly, CIC and London Insurers are incorrect in their primary argument that the remaining claims in the underlying lawsuit solely allege intentional acts that preclude coverage.

If the present case did not involve allegations against a religious organization, the primary question to be answered in determining whether the conduct would qualify as an unexpected or unintentional "occurrence" would be whether the injuries

sustained by Christopher Klump were, in fact, intended by the insured. See Steelman, 765 S.W.2d at 377. "What [the insured] intended or expected [would be] a question of fact for the trial court" and should not be disposed on summary judgment. Pacchetti, 808 S.W.2d at 371. However, because this case does involve allegations against a religious organization, the Court must answer an entirely different inquiry.

The Missouri Supreme Court in Gibson v. Brewer, 952 S.W.2d 239 (Mo. 1997), acknowledged that "[r]eligious institutions are not immune from civil liability for the acts of their clergy" as long as "neutral principles of law can be applied without determining questions of religious doctrine." Id. at 246. In addition to being exposed to liability for "generally applicable criminal law," religious organizations are not immune from civil intentional tort claims because "[r]eligious conduct intended or certain to cause harm need not be tolerated under the First Amendment." Id. at 248. "Under the First Amendment, liability for intentional torts can be imposed without excessively delving into religious doctrine, polity, and practice." Id. at 249. In contrast, "[a]pplying a negligence standard to the actions of the Diocese in dealing with its parishioners offends the First Amendment." Id. at 249. Negligence-based claims require a court to determine the reasonableness of the conduct of the actor, which in a religious setting would be the Diocese or clergy, "inevitably" requiring a court to "judge the reasonableness of religious beliefs, discipline, and government." See id. As such, the Gibson decision makes clear that negligence-based claims against a religious institution, such as the Archdiocese here, cannot stand.

Although Missouri does recognize a cause of action for recklessness, recklessness is treated as a form of negligence. Hatch v. V.P. Fair Found., Inc., 990 S.W.2d 126, 139 (Mo. Ct. App. 1999). "Recklessness is an aggravated form of

negligence which differs in quality, rather than in degree, from ordinary lack of care. It is applied to conduct which is negligent, rather than intentional, but which is so far from a proper state of mind that it is treated in many respects as if it were so intended." Id.  "Reckless conduct may be negligent in that it is unreasonable but it is and must be something more than unreasonable, 'it must contain a risk of harm to others in excess of that necessary to make the conduct unreasonable and therefore, negligent." Id. (citing RESTATEMENT (SECOND) OF TORTS §§ 500, 501, 1294). Under a recklessness claim, the court would be required to analyze the reasonableness of the conduct, which, in turn, would require a court to "judge the reasonableness of religious beliefs, discipline, and government," which as instructed by Gibson, would be a violation of the First Amendment.  See Gibson, 952 S.W.2d at 249.

Because recklessness is considered a form of negligence under current Missouri law, the Archdiocese cannot be held liable for the reckless conduct alleged in Count I. The CIC and London Insurers policies limit coverage for a "loss," which is defined as "the sums paid as damages in settlement of a claim or in satisfaction of a judgment for which the insured is *legally liable*."  As such, CIC and London Insurers have no duty to indemnify the Archdiocese for any claims based on recklessness.  Further, because the remaining claims in the underlying lawsuit allege intentional wrongful conduct, which do not satisfy as "occurrences" under the policies, the insurers again have no duty to indemnify the Archdiocese.

The Archdiocese has pointed to no authority supporting the assertion that the Gibson decision is somehow inapplicable because the Klump lawsuit was settled.  Also, while the Archdiocese argues that Gibson is "a minority opinion among decisions of its kind around the country" and "may be subject to review and reversal by the Supreme

Court," it cites to no United States Supreme Court or Missouri Supreme Court decision overruling Gibson.  "[A] Missouri Supreme Court interpretation of federal constitutional law constitutes the controlling law within our state until either the Missouri Supreme Court or the United States Supreme Court declares otherwise." Doe v. Roman Catholic Archdiocese of St. Louis, 311 S.W.3d 818, 823 (Mo. Ct. App. 2010).

For the above reasons, the Court concludes that the claims asserted in Counts I, V and VI in the underlying lawsuit are not covered by the insurance policies at issue in this case.  Therefore, CIC and London Insurers are entitled to judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that the joint motion of for summary judgment by plaintiff Chicago Insurance Company and counterclaim defendants Certain Underwriters at Lloyd's London and London Companies [Doc. #81] is **granted**.

**IT IS FURTHER ORDERED** that the motion of plaintiff Chicago Insurance Company for judgment on the pleadings  [Doc. #46] is **moot**.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 27th day of November, 2012.